**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LUIS ADRIAN FRANCHI
ALFARO ALCORTA,

Case No. 26-CV-11486

Petitioner,

Honorable Denise Page Hood

v.

MONROE COUNTY JAIL and U.S.
IMMIGRATION and CUSTOMS ENFORCEMENT
DETROIT FIELD OFFICE DIRECTOR,

Respondents.
_________________________________/

**ORDER GRANTING PETITIONER LUIS ADRIAN FRANCHI ALFARO ALCORTA'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 18) AND MOOTING PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 19)**

## I. INTRODUCTION

Before the Court are Petitioner Luis Adrian Franchi Alfaro Alcorta's amended petition for habeas corpus (ECF No. 18) and ex parte motion for temporary restraining order (ECF No. 19). For the reasons set forth below, the amended petition for habeas corpus is granted and the ex parte motion for temporary restraining order is moot.

## II. BACKGROUND

Petitioner Luis Adrian Franchi Alfaro Alcorta ("Petitioner") was being detained by the U.S. Immigration and Customs Enforcement ("ICE") at the Monroe County Jail. (ECF No. 18, PageID.256).[1] Petitioner was born in Havana, Cuba and is a Cuban citizen. (*Id*. at PageID.259). He entered the United States without inspection on May 30, 2019, and was immediately found by immigration officials and arrested. *Id*. (citing ECF 15, PageID.179). Upon his arrest, Petitioner notified immigration officials that he feared returning to Cuba due to the risk of political retribution. *Id*. On June 5, 2019, the Department of Homeland Security ("DHS") issued an order for Petitioner's expedited removal. (*Id*. at PageID.259-260). Petitioner was also charged and convicted of misdemeanor unlawful entry into the United States, 8 U.S.C. § 1325, and he was sentenced to time served on June 6, 2019. (*Id*. at PageID.260).

On July 19, 2019, an asylum officer determined that Petitioner's fear of returning to Cuba was credible. *Id*. He was thereafter placed in ordinary removal proceedings and granted bond by an immigration judge on September 5, 2019. *Id*. Since September 5, 2019, Petitioner has lived with his family in Miami, Florida. *Id*. He has no criminal history other than the misdemeanor conviction for entering unlawfully.

---

[1] At the hearing on September 15, 2026, the Court learned that Petitioner was recently transferred from the Monroe County Jail to the North Lake Detention Center, in Baldwin, Michigan.

Petitioner has been working for his brother's roofing company and as a rideshare driver for Uber. *Id*. He has received valid work authorization in the past. *Id*. Petitioner's removal proceedings ended on May 3, 2022, when an immigration judge granted a motion by DHS to dismiss the removal proceedings without prejudice. *Id*. DHS moved for dismissal "pursuant to its exercise of prosecutorial discretion." *Id*.

On November 24, 2025, Petitioner was arrested in Michigan after being pulled over for a routine traffic stop. (*Id*. at PageID.261). He was not charged with any violation of traffic laws, but local police called immigration officials, who arrested Petitioner at the scene. *Id*. (citing ECF No. 15, PageID.181). Petitioner was not given notice of any warrant for his arrest and was only issued a notice to appear for removal proceedings after his arrest. *Id*. Petitioner requested a bond determination, but that request was denied because the immigration judge concluded that Petitioner was not entitled to an individualized bond hearing and was subject to mandatory detention. *Id*. Petitioner has remained in custody since that time. *Id.*

On April 2, 2026, an immigration judge ordered Petitioner's removal to Cuba. *Id*. Petitioner timely appealed the removal order on April 24, 2026. *Id*. The Board of Immigration Appeals ("BIA") recently set a briefing schedule.[2] Petitioner's order of

[2] At the hearing on September 15, 2026, Respondents informed the Court that a briefing schedule was recently set.

removal is not administratively final, and he remains detained under § 1226(a), the statute authorizing his pre-order of removal detention. (*Id*. at PageID.261-262).

On May 5, 2026, Petitioner, by his Next Friend, filed a petition for writ of habeas corpus. (ECF No. 1).[3] The petition requested that the Court order Petitioner's immediate release from custody, or alternatively, order a prompt individualized bond hearing before an immigration judge. (*Id*. at PageID.4). On May 29, 2026, Petitioner requested a redetermination of his bond eligibility by an immigration judge based upon the Sixth Circuit's recently published decision *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). Petitioner, however, has not received a new bond hearing date for an individualized bond hearing before an immigration judge. (*Id*. at PageID.262).

On June 23, 2026, the Court issued an order appointing the federal community defender on behalf of Petitioner and an attorney appearance was subsequently filed on June 29, 2026. (ECF Nos. 8, 10). On July 1, 2026, Respondents filed a motion to vacate order requiring a responsive pleading, a motion to strike the petition for writ of habeas corpus, a motion to vacate order appointing federal community defender, and a motion to dismiss for lack of service. (ECF Nos. 11, 12, 13, 14). Subsequently, on July 2, 2026, Respondents filed a response to the petition for writ of habeas

---

[3] The petition was filed by Luis Alain Franchi Alfaro, Petitioner's brother, acting as Petitioner's Next Friend. (*See* ECF No. 1, PageID.1).

corpus. (ECF No. 15). A hearing was held on July 8, 2026. Following the hearing, on July 13, 2026, the Court issued an order setting a briefing schedule for petition for writ of habeas corpus, mooting Respondents' motion to vacate the order requiring responsive pleading, denying Respondents' motion to vacate order appointing federal community defender and holding Respondents' motion to strike petition for writ of habeas corpus and motion to dismiss for lack of service in abeyance. (ECF No. 17).

Petitioner filed an amended petition for writ of habeas corpus on August 7, 2026, seeking immediate release from custody. (ECF No. 18). The petition is fully briefed. (ECF Nos. 20, 21). On August 17, 2026, Petitioner filed an ex parte motion for temporary restraining order also seeking immediate release from custody. (ECF No. 19). The Government filed a response in opposition on September 8, 2026. (ECF No. 23). A hearing was held on September 15, 2026.

## III. APPLICABLE LAW

Habeas relief is available to individuals who are held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). When a district court receives a habeas petition, it must either grant the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the petition that the petitioner is not entitled to relief. 28 U.S.C. §

2243. Federal courts may exercise jurisdiction under § 2241 to consider challenges to immigration detention brought by noncitizens. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A.R.P. v. Trump*, 605 U.S. 91, 145 S. Ct. 1364, 1367 (2025).

## IV. ANALYSIS

### a. Proper Respondents

Petitioner files this action against (1) Kevin Raycraft, the Director of the Detroit Field Office of ICE's Enforcement and Removal Operations division; (2) Todd Lyons, the Senior Official Performing the Duties of the Director of ICE; (3) Markwayne Mullin, the Secretary of DHS; (4) Todd Blanche, the Acting Attorney General of the United States; (5) Julie Massengill, the Jail Administrator of the Monroe County Jail. (ECF No. 18, PageID.258-259).

Respondents argue that pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), Petitioner's claim should only be brought against the warden of Petitioner's detention facility, the Monroe County Jail. (ECF No. 20, PageID.316-317). Additionally, Respondents argue that under *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), the Sixth Circuit has held that the INS District Director may be the immediate custodian of noncitizens in immigration detention for certain kinds of

habeas challenges.[4] (*Id*. at PageID.317). Respondents, however, argue that neither the Supreme Court nor the Sixth Circuit has recognized a habeas claim against multiple respondents. *Id.* (citing *Padilla*, 542 U.S. at 435; *Roman*, 340 F.3d at 322–27). Respondents assert that because Petitioner challenges his current physical detention, the warden of Petitioner's detention center is the only proper respondent. *Id*. Respondents argue that if the Court finds that Petitioner's immediate custodian is the individual with legal authority over his detention, then only the ICE District Director is the proper respondent. (*Id*. at PageID.318 (citing *Cid-Barrios v. Raycraft*, 814 F. Supp. 3d 839, 847 (E.D. Mich. 2025)). Respondents contend that ultimately there can only be one proper respondent in this case because Petitioner has not argued or pled any facts that could meet the extraordinary circumstances described in *Roman* for naming a higher-level supervisory official as a respondent and there is no authority permitting a habeas petitioner to name more than one respondent in a habeas case. *Id*. (citing *Padilla*, 542 U.S. at 435; *Roman*, 340 F.3d at 322–27).

In his reply brief, Petitioner argues that ICE routinely moves detainees between districts. (ECF No. 21, PageID.327). Petitioner contends that keeping all Respondents in this case ensures release, even if he is transferred outside of

[4] "INS 'District Directors' are the same as today's ICE Field Office Directors; *Roman's* holding has been applied without controversy to Field Office Directors." *Cervantes-Munoz v. Raycraft*, 831 F. Supp. 3d 505, 508 (E.D. Mich. 2026) (citations omitted).

Respondent Raycraft's control. *Id*. (citing *Daza-Rojas* v. *Raycraft,* 2026 WL 1133196, at *2 (E.D. Mich. Apr. 27, 2026)). As such, Petitioner asserts that at minimum, Respondents Raycraft and Mullin should remain parties to this action. *Id*. (citing *Calderon Mendez v. Raycraft,* 2026 WL 626925, at *2 (E.D. Mich. Mar. 5, 2026)).

In *Roman*, the Sixth Circuit recognized that, although "the immediate custodian rule generally applies to alien habeas corpus petitioners," an exception may be appropriate where immigration authorities exercise their transfer power in a manner that could frustrate a petitioner's pursuit of habeas relief. *Roman*, 340 F.3d at 322, 326. At the hearing on September 15, 2026, the Court learned that Petitioner was recently transferred from the Monroe County Jail to the North Lake Detention Center. Here, the concern identified in *Roman* and raised by Petitioner has materialized because Petitioner was transferred outside this District and out of Massengill's control during the pendency of this action. Accordingly, the Court finds that keeping all existing Respondents as parties in this action is warranted to ensure that they maintain authority to enforce this Court's grant of habeas relief despite his transfer.

**b. Amended Habeas Corpus Petition**

A district court may grant a writ of habeas corpus to a petitioner who is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner contends that his detention is unlawful for three main reasons. (ECF No. 18, PageID.262). First, he argues that Respondents violated the Immigration and Nationality Act by arresting him without an administrative warrant as required by 8 U.S.C. § 1226(a). *Id*. Second, he argues that Respondents violated his procedural due process rights by re-detaining him, after previously releasing him on bond, without pre-deprivation notice or an opportunity to be heard. (*Id*. at PageID.262-263). Third, he argues that his continued detention for more than six months without an individualized bond hearing violates his right to due process. (*Id*. at PageID.263). Because the Court concludes that Petitioner is entitled to relief on his first and third grounds, it need not address his alternative pre-deprivation due process claim.

1. Warrantless Arrest

Petitioner argues that Respondents violated the Immigration and Nationality Act's requirement that they obtain an administrative warrant before arresting Petitioner. (*Id*. at PageID.263). Petitioner contends that because he had been present in the United States for seven years, his detention is governed by 8 U.S.C. § 1226. *Id*. Petitioner argues that under § 1226, noncitizens may only be arrested and detained after the agency issues an administrative warrant. (*Id*. at PageID.263).

Petitioner contends that there is no evidence that Respondents arrested him pursuant to a warrant as required by the statute. (*Id*. at PageID.265). Relying on *Leon-Nunez v. Warden, Cent. Valley Annex,* No. 1:26-CV-04881 (VC), 2026 WL 1999923, at *2 (E.D. Cal. July 10, 2026), Petitioner argues that because there was no valid warrant before his arrest, his detention is unlawful. *Id*. Petitioner further argues that even if Respondents were to offer him a belated bond hearing, a bond hearing cannot cure the basic deficiency of his unlawful arrest. (*Id*. at PageID.266).

Respondents do not dispute that Petitioner is presently detained under § 1226(a), but argue that his warrantless arrest is authorized by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). (ECF No. 20, PageID.318).[5] Respondents assert that immigration officers deemed Petitioner an "imminent flight risk" after learning that he had previously been removed from the United States, unlawfully reentered, and allegedly used fraudulent documents to obtain immigration benefits. (*Id*. at PageID.318-319).

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Courts interpreting this

[5] Although Respondents' response brief cited "8 U.S.C. § 1357(a)(1)" as the relevant authority, at the hearing on September 15, 2026, Respondents stated on the record that this was incorrect and the relevant provision is "8 U.S.C. § 1357(a)(2)."

language have concluded that issuance of a warrant is ordinarily a necessary condition for detention under § 1226(a). *See J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025).

There are two requirements for a warrantless arrest under § 1357(a)(2). The immigration officer must have reason to believe (1) that the noncitizen is in violation of immigration law and (2) that the noncitizen "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also Peralta v. Dep't of Homeland Sec.*, No. 2:26-cv-337, 2026 U.S. Dist. LEXIS 158936, at *6 (S.D. Ohio July 17, 2026) (stating that a warrantless arrest requires probable cause to believe both that the noncitizen is unlawfully present and likely to escape before a warrant may be obtained). Respondents contend that this warrantless exception applies here because, upon encountering Petitioner, immigration officials learned that he had previously been removed from the United States, unlawfully reentered, and allegedly used fraudulent documents in 2020 to obtain immigration benefits. (ECF No. 20, PageID.318-319).

The Court finds that although these circumstances may bear on an assessment of Petitioner's general risk of flight, § 1357(a)(2) requires a more particularized determination. The relevant question is whether officers had reason to believe that Petitioner was likely to escape before a warrant could be obtained. Courts within this

Circuit have considered factors such as whether the noncitizen attempted to evade officers, answered officers' questions without incident, maintained stable employment or a residence, and had a known criminal history. *See United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 889–90 (S.D. Ohio 2016) (finding no probable cause of escape where the noncitizen was arrested near his home, lacked a known criminal history, answered officers' questions without incident, maintained stable employment, and lived with his family); *United States v. Hernandez-Hernandez*, No. 3:18-cr-00009-GFVT, 2018 U.S. Dist. LEXIS 208349, at *15–16 (E.D. Ky. Dec. 11, 2018) (relying on factors outlined in *Pacheco-Alvarez* and concluding that the Government had not shown that the defendant was likely to flee).

Recently, courts applying § 1357(a)(2) have distinguished a generalized risk of flight from the statute's temporal requirement. In *Abelardo M.-G. v. Easterwood*, No. 26-cv-3479 (LMP/SGE), 2026 U.S. Dist. LEXIS 193220, at *4 (D. Minn. Aug. 27, 2026), the court explained that the inquiry is not simply whether a noncitizen might leave the scene before officers obtain a warrant, but whether immigration authorities would be able to locate and arrest the noncitizen after obtaining one. Similarly, in *Anibal P.P. v. Blanche*, No. 26-cv-3125 (LMP/LIB), 2026 U.S. Dist. LEXIS 153824, at *6–10 (D. Minn. July 13, 2026), the court considered the noncitizen's known address, employment, length of residence in the United States, community ties, and lack of criminal history in concluding that agents lacked

probable cause to believe he would evade detention before a warrant could be obtained. *Id.*; *see also Pacheco-Alvarez*, 227 F. Supp. 3d at 889–90.

Respondents have not made that showing here. The arrest record does not identify any attempt by Petitioner to flee or evade officers. (ECF No. 15-4). Petitioner identified himself as a Cuban citizen to officers, and the arrest record identifies a specific Monroe, Michigan address for him, although the address was marked “unvalidated.” (*Id*. at PageID.201-202). Additionally, Petitioner had been present in the United States for more than six years before his arrest, and the arrest record identified Petitioner’s employer. *Id*. Respondents’ asserted flight-risk determination rests substantially on conduct that allegedly occurred years before Petitioner’s present arrest. (ECF No. 20, PageID.318 (citing 2025 I-213, ECF No. 15-4, PageID.202)). Respondents allege that Petitioner, through his attorney, submitted fraudulent documents in connection with immigration benefits in 2020. *Id*. Yet immigration authorities were aware of Petitioner’s presence in the United States during the years that followed. Respondents’ own account places the alleged fraudulent conduct in 2020, two years before DHS exercised its prosecutorial discretion and moved to dismiss Petitioner’s removal proceedings. (ECF No. 18, PageID.260; ECF No. 20, PageID.312). The immigration judge granted DHS’s motion on May 3, 2022, dismissing the removal proceedings without prejudice and necessarily cancelling Petitioner’s bond. (ECF No. 18, PageID.260). Petitioner was

never charged in connection with the alleged submission of fraudulent documents. (ECF No. 15-4, PageID.202).

Respondents do not explain why conduct allegedly occurring in 2020 established that Petitioner was likely to escape before a warrant could be obtained when officers arrested him years later. Nor do Respondents explain why, if the alleged fraud demonstrated that Petitioner posed such an immediate risk of escape, immigration authorities did not obtain a warrant during the intervening years. Considered together with the absence of documented evasive conduct and the identifying information available to officers at the time of the arrest, the alleged fraud, without more, does not establish that Petitioner was likely to escape before a warrant could be obtained, as required by § 1357(a)(2).

Further, at the hearing on September 15, 2026, Respondents emphasized that the warrant contemplated by § 1226(a) is an administrative warrant obtained through an internal process rather than a judicial warrant. Respondents asserted that such warrants are readily obtainable. Given that characterization, Respondents' failure to explain why a warrant could not be obtained before Petitioner's arrest further weighs against application of § 1357(a)(2)'s narrow exception.

Accordingly, the Court finds that Respondents have not established that Petitioner's warrantless arrest fell within § 1357(a)(2)'s exception. Because the record does not establish either that a warrant preceded Petitioner's arrest or that the

requirements for a warrantless arrest were satisfied, Petitioner's arrest and resulting detention did not comply with the statutory requirements governing his detention. Courts considering materially similar warrantless arrests have concluded that when the Government fails to comply with § 1226(a)'s warrant requirement and cannot establish the exception provided by § 1357(a)(2), release is warranted. *See J.A.C.P.*, 2025 WL 3013328, at *8; *Chogllo Chafla*, 804 F. Supp. 3d at 264; *Gomez v. Guadian*, Civil Action No. GLR-26-3078, 2026 U.S. Dist. LEXIS 197026, at *11 (D. Md. Sept. 1, 2026).

2. <u>Individualized Bond Hearing</u>

Petitioner also argues that his continued detention without an individualized bond hearing violates his due process rights. (ECF No. 18, PageID.267). He previously requested a bond hearing through counsel in November 2025, but the immigration court denied individualized review because it considered Petitioner detained under § 1225(b)(2) and therefore ineligible for bond under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (*Id*. at PageID.261). After the Sixth Circuit decided *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), rejecting the statutory interpretation adopted in *Yajure Hurtado*, Petitioner again sought review of his custody determination on May 29, 2026. (*Id*. at PageID.267). Even so, Petitioner has yet to receive an individualized bond hearing. *Id*. As such, Petitioner

maintains that his continued detention violates § 1226(a) and the Due Process Clause. (*Id*. at PageID.272).

Respondents argue that Petitioner's prior denial of bond under *Matter of Yajure Hurtado* does not render his present detention unlawful because habeas relief addresses current custody, not past harms. (ECF No. 20, PageID.319-321). According to Respondents, after the Sixth Circuit decided *Lopez-Campos*, Petitioner could have obtained an individualized bond hearing by submitting a new request to the immigration court but failed to do so. *Id.* Respondents therefore contend that Petitioner has failed to exhaust the available administrative process and that this action should be dismissed without prejudice until he seeks a bond hearing before the immigration court. *Id.* Respondents further argue that Petitioner's detention does not violate due process because the governing regulations and Executive Office for Immigration Review ("EOIR") procedures provide him an opportunity to request a hearing before a neutral immigration judge, present evidence and argument, be represented by counsel, and appeal an adverse decision. (*Id*. at PageID.322). Because Petitioner has not availed himself of those procedures, Respondents contend that he has waived his procedural due process claim. *Id.*

Respondents also rely on § 8.3(c)(4) of the EOIR Policy Manual, which provides that when an immigration judge or the Board has previously ruled in bond proceedings, a subsequent request must be in writing and must demonstrate

materially changed circumstances. (ECF No. 20, PageID.318). The regulation cited by the Manual provides that "[a]fter an initial bond redetermination," a subsequent request must be made in writing and will be considered upon a showing that the noncitizen's circumstances have materially changed since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

The Court is not persuaded. The record establishes that Petitioner has sought such a hearing on more than one occasion. In November 2025, Petitioner's attorney requested a bond hearing in immigration court. (ECF No. 15-7, PageID.212). The immigration court did not provide Petitioner an individualized bond hearing because, under *Matter of Yajure Hurtado*, it considered Petitioner detained pursuant to § 1225(b)(2)(A) and therefore statutorily ineligible for release on bond. (ECF No. 15-8, PageID.218). Respondents acknowledge that no individualized bond hearing occurred at that time.

The Sixth Circuit subsequently rejected the statutory interpretation underlying that denial. In *Lopez-Campos*, the court held that similarly situated noncitizens are detained under § 1226 rather than § 1225(b)(2)(A). 175 F.4th at 732. The Sixth Circuit also affirmed the district courts' conclusions that detention without an individualized bond hearing under § 1226(a) deprived the petitioners of due process, finding that they were "due individualized bond hearings in light of the significant time they have spent within the interior of the United States." *Id.* at 734. Petitioner

had resided continuously within the United States for more than six years before his present detention. After months of detention, Respondents now concede that § 1226(a) governs Petitioner and acknowledge that noncitizens detained under that provision are eligible to seek release through an individualized bond hearing.

Petitioner continued to seek individualized review after *Lopez-Campos*. On May 29, 2026, DHS issued Petitioner a Notice of Custody Determination pursuant to section 236 of the INA and determined that he would remain detained. (ECF No. 18-3, PageID.289). The notice expressly informed Petitioner that he could "request a review of this custody determination by an immigration judge." *Id*. Petitioner checked the box stating, "I do request an immigration judge review of this custody determination," signed the form, and dated it May 29, 2026. *Id*. More than four months later, Petitioner has not received an individualized bond hearing before an immigration judge. (ECF No. 18, PageID.267). This record does not support Respondents' contention that Petitioner simply failed to seek individualized review.

It is unclear whether Petitioner received an "initial bond redetermination" within the meaning of § 1003.19(e). The immigration judge did not determine in November 2025 whether Petitioner should remain detained based on his individual risk of flight or dangerousness. Rather, the immigration judge concluded that Petitioner was ineligible for bond under *Matter of Yajure Hurtado* and therefore did not conduct an individualized bond determination. (ECF No. 20, PageID.313). The

Court need not decide whether that threshold ruling constitutes an initial bond redetermination under § 1003.19(e). Even assuming that it does, the circumstances underlying the November 2025 decision have materially changed. The legal premise for denying Petitioner individualized review was that § 1225(b)(2)(A) rendered him categorically ineligible for bond. *Lopez-Campos* subsequently rejected that interpretation, Respondents now agree that § 1226(a) governs Petitioner, and DHS thereafter issued Petitioner a new custody determination. The categorical statutory bar that prevented an individualized bond determination in November 2025 no longer applies to Petitioner.

In *Gutierrez-Lopez v. Field Office Director of Enforcement & Removal Operations*, No. 2:26-cv-11143 (E.D. Mich. May 20, 2026), the court rejected the Government's argument that the petitioner needed to request a bond hearing after *Lopez-Campos*. The court concluded that *Lopez-Campos* "does not require such a person to 'request' a bond hearing" and held that the habeas petition itself satisfied any request requirement. *Id.* at *2. Petitioner has done more here. He requested a bond hearing through the immigration court before *Lopez-Campos*, expressly sought immigration judge review again after that decision, and continues to seek relief through this action.

Accordingly, Respondents cannot avoid the requirements of *Lopez-Campos* by asserting that Petitioner failed to exhaust available administrative remedies

because he did not request a bond hearing. Even if Petitioner was required to take an additional administrative step, any further exhaustion requirement is excused. *See Cruz v. Bullock*, No. 2:26-cv-02950-SHL-cgc, 2026 U.S. Dist. LEXIS 206938, at *2–3 (W.D. Tenn. Sept. 14, 2026) (excusing exhaustion where the legal questions were fit for prompt resolution and the petitioner could not obtain meaningful and timely administrative relief). As such, the Court declines to dismiss the Petition for failure to exhaust administrative remedies and finds that Petitioner's continued detention without an individualized bond hearing violates his right to due process under the Fifth Amendment.

Petitioner has a protected liberty interest in freedom from detention, and Respondents deprived him of that interest by detaining him without the individualized bond process required under § 1226(a). *See Lopez-Campos*, 175 F.4th at 732–34. Courts within this Circuit have likewise concluded that a belated bond hearing does not adequately remedy the deprivation resulting from detention without the individualized process required under § 1226(a). *See K.G.P. v. Bullock*, No. 3:26-cv-01228, 2026 U.S. Dist. LEXIS 205724, at *8 (M.D. Tenn. Sept. 11, 2026); *Ortiz v. W. Tenn. Det. Facility*, No. 2:26-cv-02894-SHL-tmp, 2026 U.S. Dist. LEXIS 188767, at *3–4 (W.D. Tenn. Aug. 21, 2026); *Villafranca Lara v. Ladwig*, No. 26-CV-02079, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026). In *Villafranca Lara*, the court declined to order a bond hearing after the fact because ICE had

detained the petitioner under § 1225(b)(2)(A), a detention scheme that afforded no bond hearing, and concluded that immediate release most closely remedied the deprivation of liberty. Habeas corpus is "at its core a remedy for unlawful executive detention," and its traditional remedy is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Accordingly, because both Petitioner's arrest and continued detention are unlawful, the Court finds that immediate release, rather than a belated bond hearing, is the appropriate remedy.

**V. CONCLUSION / ORDER**

For the reasons stated above,

IT IS ORDERED that Luis Adrian Franchi Alfaro Alcorta's amended petition for writ of habeas corpus **(**ECF No. 18) is GRANTED;

IT IS FURTHER ORDERED that Respondents are to immediately release Petitioner Luis Adrian Franchi Alfaro Alcorta, A-File No. 203-758-334, from Respondents' custody;

IT IS FURTHER ORDERED that Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner except in compliance with the statutory requirements governing his arrest and detention, including the warrant requirement of 8 U.S.C. § 1226(a) or the requirements for a warrantless arrest under 8 U.S.C. §

1357(a)(2), and from detaining Petitioner under § 1226(a) without providing the individualized bond process required by law;

IT IS FURTHER ORDERED that Petitioner's motion for a temporary restraining order (ECF. No. 19) is MOOT by this order granting him habeas relief;

IT IS FURTHER ORDERED that Respondents' motion to strike petition for writ of habeas corpus (ECF No. 12) is MOOT;

IT IS FURTHER ORDERED that Respondents' motion to dismiss for lack of service (ECF No. 14) is MOOT;

IT IS FURTHER ORDERED that Respondents are to file a Status Report with this Court within three business days to certify compliance with this Order.

**SO ORDERED.**

s/Denise Page Hood
Dated: October 15, 2026 Denise Page Hood
United States District Judge